## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANTA FE DREAMERS PROJECT; SPANISH COMMUNITY CENTER; and AMERICAN GATEWAYS,<br><br>       *Plaintiffs*,<br><br>    vs.<br><br>CHAD F. WOLF, in his purported official capacity as Acting Secretary of Homeland Security; KENNETH T. CUCCINELLI, in his purported official capacities as Senior Official Performing the Duties of Deputy Secretary of Homeland Security and Acting Director of U.S. Citizenship and Immigration Services; TONY H. PHAM, in his purported official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement; JOSEPH EDLOW, in his purported official capacity as Deputy Director for Policy of U.S. Citizenship and Immigration Services; MARK A. MORGAN, in his purported official capacity as Senior Official Performing the Duties of Commissioner of U.S. Customs and Border Protection; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; UNITED STATES CUSTOMS AND IMMIGRATION ENFORCEMENT; and UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>       *Defendants*. | **Case No. 1:20-CV-02465 (RBW)** |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF NOVEMBER 20, 2020

Plaintiffs respectfully submit this response to Defendants' notice of November 20, 2020 [ECF No. 26] regarding FEMA Administrator Gaynor's November 14, 2020 order yet again attempting to alter the Department of Homeland Security order of succession and Defendant

Wolf's November 16, 2020 orders yet again attempting to ratify the Wolf Memorandum and the USCIS Directives.  For substantially the same reasons Plaintiffs articulated in their October 9, 2020 reply and opposition brief with respect to Gaynor and Wolf's first round of orders to the same purported effect, *see* Pls.' Reply & Opp. [ECF No. 22] at 18-24, this second round of orders has no bearing on the resolution of Plaintiffs' claims.

*First*, Administrator Gaynor and Defendant Wolf's November 14 and 16 orders are themselves *ultra vires*, invalid, and without force or effect.  Administrator Gaynor had no authority to amend the DHS order of succession because he never assumed office, and now has *twice* disclaimed any authority, as Acting Secretary.[1]  In any event, 6 U.S.C. § 113(g)(2) does not authorize Acting Secretaries of Homeland Security to amend the DHS order of succession.[2]  *See Nw. Immigr. Rts. Project v. U.S. Citizenship & Immigr. Servs.*, No. 19-CV-03283-RDM, 2020 WL 5995206, at *17-24 (D.D.C. Oct. 8, 2020) (Moss, J.) ("'Secretary' in § 113(g)(2) does not include

---

[1] *See* Defs.' Nov. 20, 2020 Notice [ECF No. 26] ex. 3 at 5-6, § (c) (Nov. 14, 2020 Gaynor Mem.) (contending—like September 10, 2020 Gaynor Memorandum to same purported effect—that August 14, 2020 GAO report concluding that Commissioner McAleenan and Defendant Wolf unlawfully assumed office as Acting Secretary, as well as "recent challenges filed in Federal court" asserting the same theory, are "incorrect"); *see also Batalla Vidal v. Wolf*, __ F. Supp. 3d __, 2020 WL 6695076, at *9 (E.D.N.Y. Nov. 14, 2020) (holding first Gaynor Memorandum purportedly amending DHS order of succession invalid because "[t]here is no indication that Administrator Gaynor has ever been empowered by [DHS] to exercise the powers of the Acting Secretary, and there is every indication to the contrary"; because "the court is not aware of any authority that would allow a government official to take administrative action in the alternative"; and because, "[e]ven if Administrator Gaynor should be Acting Secretary, DHS cannot recognize his authority only for the sham purpose of abdicating his authority to DHS's preferred choice, and only in the alternative").

[2] Contrary to Defendants' characterization, Plaintiffs did not "use their reply to press [this] argument for the very first time." Defs.' Reply [ECF 23] at 15.  Plaintiffs raised this argument in a consolidated reply in support of their own motion *and* opposition to Defendants' cross-motion—and did so because Defendants revealed the existence of Administrator Gaynor's first order purportedly changing the DHS order of succession and promulgated Defendant Wolf's first set of ratification memoranda *after* Plaintiffs had already filed their opening brief.  *See* Pls.' Reply & Opp. [ECF No. 22] at 1-2; Estrada Decl. [ECF No. 22 ex. 1].

an Acting Secretary, but instead means the [permanent] Secretary and only the [permanent] Secretary."). Moreover, even if Acting Secretaries generally do have such authority, Defendants fail to explain why Administrator Gaynor's purported amendment to the order of succession under Section 113(g)(2) of the Homeland Security Act would countermand the earlier, contrary order of succession established by the President in an advance exercise of his authority under 5 U.S.C. § 3345 of the Federal Vacancies Reform Act. *See* Martinez Decl. [ECF No. 11 ex. 7] ex. 10 (Executive Order 13753) § 1. It would not: Neither the Secretary of Homeland Security nor an Acting Secretary has "authority to amend or to supersede an executive order" issued by the President, and Defendants' contrary argument threatens "to turn the normal executive branch hierarchy on its head." *Nw. Immigr. Rts. Project*, 2020 WL 5995206, at *14 n.1.

*Second*, the FVRA forbids Defendant Wolf from serving as Acting Secretary, and thus from ratifying any agency actions, because the President has nominated him to fill that office in a permanent capacity. *See* 5 U.S.C. § 3345(b)(1) (prohibiting acting service in a cabinet office by a person nominated by the President to that office if the person has never served as the "first assistant to the office" or did so "for less than ninety days").

*Third*, under 5 U.S.C. § 3348(d)(2), the Wolf Memorandum and USCIS Directives cannot be ratified. Defendants' contrary argument—that neither the Memorandum nor the Directives were issued "in the performance of a function or duty" of the office of Secretary under Section 3348(d)—is belated and forfeited because Defendants raised it for the first time in a reply in support of a cross-motion for summary judgment, *see* Defs.' Reply [ECF 23] at 18-21, thus depriving Plaintiffs of the opportunity to respond.[3] The argument also fails on its merits.

---

[3] *See, e.g.*, *Dialysis Clinic v. Leavitt*, 518 F. Supp. 2d 197, 203-04 (D.D.C. 2007) (holding argument raised for first time in reply in support of cross-motion forfeited); *Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n.2 (D.D.C. 2007) ("If the movant raises arguments for the first time in

Defendants' assertion that the phrase "function or duty of a vacant office" applies only to that practically infinitesimal universe of actions "that are, by statute or regulation, *exclusive*—that is, non-delegable—to the vacant office," Defs.' Reply [ECF 23] at 19-20, is incorrect and, not surprisingly, has been rejected twice by another court in this District.[4]  And even if Defendants' assertion were correct, Defendants fail to explain why former Homeland Security Secretary Tom Ridge's 2003 order delegating some of his responsibilities to the Deputy Secretary [ECF No. 23 ex. 1] could or would have included the authority to revoke or modify at will major programmatic orders issued by the Secretary, such as former Secretary Janet Napolitano's 2012 order establishing DACA, *see* Martinez Decl. [ECF No. 11 ex. 7] ex. 4.  Defendants appear to interpret Secretary Ridge's 2003 order as delegating to the Deputy Secretary the authority unilaterally to override orders issued by the Secretary herself—a startlingly expansive construction that would, once again, "turn the normal executive branch hierarchy on its head."  *Nw. Immigr. Rts. Project*, 2020 WL 5995206, at \*14 n.1.  For this reason, and for others that Plaintiffs intend to articulate at argument or in a surreply, the Court should reject Defendants' argument and confirm that the Wolf Memorandum is an "action taken . . . in the performance of any function or duty" of the office of Secretary, 5 U.S.C. § 3348(d)(1)-(2).

The Wolf Memorandum and USCIS Directives continue to inflict grave harms on Plaintiffs and the vulnerable populations they serve.  Pursuant to the Memorandum and Directives, Defendants are already denying first-time DACA applications submitted by clients of Plaintiffs and capping other clients' DACA renewal periods at one year rather than two.  *See* Yang Decl.

---

his reply to the non-movant's opposition, the court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply.").

[4] *See L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 30-34 (D.D.C. 2020); *Nw. Immigr. Rts. Project*, 2020 WL 5995206, at \*16.

[ECF No. 11 ex. 2] ¶ 21; Madrigal Decl. [ECF No. 11 ex. 4] ¶ 16.  Unless and until the Court vacates the Memorandum and Directives and enjoins Defendants' conduct, Plaintiffs will, consistent with their core organizational missions, be forced to continue diverting precious financial and staffing resources they would otherwise devote to DACA-unrelated services to assisting DACA clients—which, because those resources are finite, puts Plaintiffs' ability to serve both sets of clients at risk.[5]  Moreover, the greater the number of Plaintiffs' clients who receive one-year renewals of deferred action now, the greater the number of future DACA-renewal applications Plaintiffs will be required to assist with and, consequently, the greater the long-term strain on Plaintiffs' funding and resources.[6]  These ongoing harms will continue to scramble Plaintiffs' future organizational planning so long as the unlawful Wolf Memorandum and USCIS Directives are allowed to persist.  *See* Love Decl. [ECF No. 11 ex. 1] ¶¶ 36.

Thus, consistent with the expedited briefing schedule to which Defendants agreed and which the Court so-ordered, Plaintiffs request that the Court grant Plaintiffs' motion for summary judgement; deny Defendants' cross-motion; declare unlawful, vacate, and set aside the Wolf Memorandum and USCIS Directives; and immediately and permanently enjoin Defendants and their agents from implementing or enforcing any part of the Wolf Memorandum and USCIS Directives.  Alternatively, Plaintiffs request that the Court schedule oral argument on the parties' expedited cross-motions at its earliest convenience.

---

[5] *See* Madrigal Decl. [ECF No. 11 ex. 4] ¶¶ 15-22; Gloria Decl. [ECF No. 11 ex. 6] ¶¶ 20-31; Love Decl. [ECF No. 11 ex. 1] ¶¶ 20-35; Yang Decl. [ECF No. 11 ex. 2] ¶¶ 15-22; O'Sullivan Decl. [ECF No. 11 ex. 3] ¶¶ 10-12; Wilkes Decl. [ECF No. 11 ex. 5] ¶¶ 9-11.

[6] *See* Madrigal Decl. [ECF No. 11 ex. 4] ¶¶ 16-22; Gloria Decl. [ECF No. 11 ex. 6] ¶¶ 20-30; Love Decl. [ECF No. 11 ex. 1] ¶¶ 19-35; Yang Decl. [ECF No. 11 ex. 2] ¶¶ 15-16, 18-22.

Dated:  November 25, 2020

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP


By: /s/ E. Martin Estrada
E. MARTIN ESTRADA

THOMAS A. SAENZ
tsaenz@MALDEF.org
(Admitted *Pro Hac Vice*)
ERNEST I. HERRERA
eherrera@MALDEF.org
(Admitted *Pro Hac Vice*)
MEXICAN AMERICAN LEGAL DEFENSE
   AND EDUCATIONAL FUND
634 South Spring Street
Los Angeles, California 90014
Telephone:     (213) 629-2512
Facsimile:      (213) 629-0266

E. MARTIN ESTRADA
Martin.Estrada@mto.com
(Admitted *Pro Hac Vice*)
BRANDON E. MARTINEZ
Brandon.Martinez@mto.com
(Admitted *Pro Hac Vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90017
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

ADELE M. EL-KHOURI
Adele.El-Khouri@mto.com
(D.C. Bar No. 1025090)
XIAONAN APRIL HU
April.Hu@mto.com
(Admitted *Pro Hac Vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001
Telephone:     (202) 220-1100
Facsimile:      (202) 220-2300


*Counsel for Plaintiffs*